**UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO**

| | |
|---|---|
| TIMOTHY KAY H., | Case No.: 4:25-cv-00173-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending is Plaintiff Timothy Kay H.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of his disability claim.  This action is brought pursuant to 42 U.S.C. §§ 205(g), 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On November 29, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 4, 2021.  This application was originally denied on April 13, 2023, and again on reconsideration on July 13, 2023.  On or around July 27, 2023, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On January 26, 2024, ALJ Diane Davis held a telephonic hearing, at which time Plaintiff, appearing with his principal representative, Marrick Shane Jackson, and attorney, Sarah Jenkins, testified.  Barry J. Brown, an impartial vocational expert, also appeared and testified at the same hearing.

On April 3, 2024, the ALJ issued a decision denying Plaintiff's claim, finding that he was not disabled within the meaning of the Social Security Act.  Plaintiff timely requested review

**MEMORANDUM DECISION AND ORDER - 1**

from the Appeals Council.  On February 21, 2025, the Appeals Council denied Plaintiff's

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social

Security.

Having exhausted his administrative remedies, Plaintiff brings this case.  He raises two

points of error: (i) the ALJ failed to properly evaluate his subjective symptom testimony; and (ii)

the ALJ failed to account for his documented need for unscheduled breaks and excessive

absences, rendering the residual functional capacity ("RFC") assessment legally deficient.  *See*

Pl.'s Brief at 8-19 (Dkt. 16).  Plaintiff in turn requests that the Court reverse the ALJ's decision

and remand for further proceedings.  *Id*. at 19.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  *See* 42 U.S.C. § 405(g).  If there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.

Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable

amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide

whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible

**MEMORANDUM DECISION AND ORDER - 2**

for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.      The Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the

**MEMORANDUM DECISION AND ORDER - 3**

claimant has engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff had not engaged in SGA since May 4, 2021 (the alleged onset date).  AR 14.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Plaintiff had the following severe medically determinable impairments: "degenerative disc disease of the cervical spine and migraines."  AR 14.

The third step requires the ALJ to determine the medical severity of any impairments, that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Plaintiff's above-listed medically determinable impairments, while severe, did not

**MEMORANDUM DECISION AND ORDER - 4**

meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  AR 16.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c), including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently, except he can never climb ladders, ropes, or scaffolds, and he can never work at unprotected heights or dangerous, unprotected major manufacturing machinery.  He can frequently handle and finger bilaterally.

AR 17.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that Plaintiff was capable of performing past relevant work as an automobile detailer because such work does

**MEMORANDUM DECISION AND ORDER - 5**

not require the performance of work-related activities precluded by his RFC.  AR 26.  Based on these findings, the ALJ concluded that Plaintiff was not disabled.  AR 27.

**B.      Analysis**

Plaintiff brings two challenges.  First, he argues that the ALJ improperly discounted his subjective symptom testimony regarding the severity and functional effects of his migraines, post-concussive symptoms, and cervical impairments.  Pl.'s Brief at 9-14 (Dkt. 16).  He contends that the ALJ relied too heavily on isolated normal findings, selective evidence of improvement, and a treatment gap that Plaintiff attributes to lack of insurance.  *Id*.  Second, Plaintiff contends that the ALJ's RFC assessment is unsupported because it omits limitations affecting his ability to sustain full-time work activity.  *Id*. at 14-19.  In particular, he contends that the ALJ improperly rejected the opinion of treating provider Amanda Thompson, FNP-C (hereinafter "NP"), who opined that Plaintiff would require unscheduled breaks, lie-down periods, and frequent absences, and failed to evaluate the functional impact of his post-concussive syndrome.  *Id*. at 14-19.

Defendant responds that substantial evidence supports the ALJ's evaluation of Plaintiff's symptom allegations, including inconsistencies with the objective medical evidence, improvement with treatment, and Plaintiff's reported activities of daily living.  Def.'s Brief at 3-8 (Dkt. 17).  It further argues that the ALJ reasonably found NP Thompson's opinion unpersuasive under the supportability and consistency factors and that the RFC adequately reflects the limitations supported by the record.  *Id*. at 8-11.

The Court addresses each issue in turn.

1.      The ALJ Reasonably Discounted Plaintiff's Subjective Complaints

Plaintiff's first challenge is that the ALJ's evaluation of his subjective complaints is unsupported by substantial evidence.  In his function reports, Plaintiff described significant limitations stemming from migraines, dizziness, neck pain, and numbness in his upper

**MEMORANDUM DECISION AND ORDER - 6**

extremities.  AR 267-74, 297-04.  He reported that these symptoms limit his ability to sustain

activity, explaining that he performs household tasks such as cleaning or chores only in short

bursts, has a hard time sleeping, suffers blackouts, experiences difficulty with concentration and

memory, and struggles with fine motor tasks and grip strength due to numbness in his hands.  *Id*.

He further indicated that dizziness, headaches, and fatigue restrict how long he can remain active

before needing to rest.  Plaintiff's hearing testimony echoed these allegations.  AR 47-63.  He

testified that he experiences frequent migraines and dizziness, has difficulty concentrating and

remembering details, and sometimes must lie down for extended periods due to pain and fatigue.

According to Plaintiff, these symptoms interfere with his ability to maintain pace, remain on

task, and sustain regular work activity.  *Id*.

      *a.*     *The Standard for Evaluating Subjective Complaints*

As the trier-of-fact, the ALJ is in the best position to make credibility determinations, and

for this reason, her determinations are entitled to great weight.  *Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998).  An ALJ is not "required to believe every allegation of disabling pain" or

other nonexertional impairment.  *Fair*, 885 F.2d at 603.  However, if an ALJ discredits a

claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.

*Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step

analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second,

if such objective medical evidence exists, and the ALJ has not determined that the claimant is

**MEMORANDUM DECISION AND ORDER - 7**

malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p, available at 2017 WL 518034 (October 25, 2017). In short, it is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Generalized findings will not satisfy this standard though. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (in other words, "the 'clear and convincing' standard requires an ALJ to show h[er] work").

On appeal, the district court's role is to review, not redo, this work. So long as there is substantial evidence for the ALJ's decision – even if there is another interpretation of the

**MEMORANDUM DECISION AND ORDER - 8**

evidence – courts will not engage in second-guessing. *Thomas*, 278 F.3d at 959. When the ALJ's rationale for rejecting a claimant's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt*, 53 F.4th at 499.

    b.   *The ALJ's Evaluation of Plaintiff's Subjective Complaints*

  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 21. For the reasons that follow, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Plaintiff's symptom testimony. The ALJ adequately showed her work.

  First, the ALJ reasonably found that Plaintiff's allegations of disabling symptoms were not fully consistent with the objective medical evidence. AR 18-23. The ALJ acknowledged abnormalities in the record but explained that many examinations reflected largely normal findings inconsistent with Plaintiff's claims of extreme and debilitating limitations. For example, the ALJ cited treatment records documenting a normal CT scan following Plaintiff's injury, neurological examinations that were largely unremarkable aside from mild sway on Romberg testing, and subsequent examinations noting normal gait, intact balance, and no significant weakness. *Id*. (citing AR 336-37, 340-42, 346-49, 352-53, 359-66, 378-79, 663, 692-94). The ALJ also highlighted examinations showing normal cognition, attention and concentration, intact sensation, and full motor strength in the upper extremities. *Id*. While imaging revealed degenerative changes in the cervical spine, physical examinations repeatedly showed full strength, intact sensation, and normal tandem gait. *Id*. (citing AR 352-53, 378-79, 457-58, 663-66, 701-02, 706-07). These references provided a reasonable evidentiary basis for

**MEMORANDUM DECISION AND ORDER - 9**

the ALJ's conclusion that Plaintiff's subjective complaints were not entirely consistent with the medical record. *See Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). The Court must uphold that determination even if the evidence could also be interpreted to support Plaintiff's interpretation.

Second, the ALJ reasonably relied on evidence that Plaintiff's symptoms improved with treatment. The record reflects that certain treatments – such as cervical epidural steroid injections and migraine medications – provided meaningful relief. For instance, treatment notes indicate that Plaintiff reported significant improvement following injections, including substantial reduction in neck pain and resolution of arm numbness. AR 20-22 (citing AR 457-58, 706-07, 709). Similarly, the ALJ cited records showing that Plaintiff's migraine symptoms improved with medication and that physical therapy documented functional progress. *Id*. (citing AR 340-42, 346-49, 352-53, 496, 692-93). Although Plaintiff continued to report some symptoms, evidence of improvement with treatment is a relevant consideration when evaluating the intensity and persistence of alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (effectiveness of medical treatment); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Third, the ALJ reasonably found that Plaintiff's reported daily activities were inconsistent with the allegations of completely disabling limitations. The ALJ cited Plaintiff's own function

**MEMORANDUM DECISION AND ORDER - 10**

reports describing activities such as preparing meals, driving, caring for pets, performing household chores, engaging in hobbies like building models, and socializing.  AR 18, 23 (citing AR 55-56, 268-71, 298-301).  To this end, the ALJ also referenced that Plaintiff had helped a neighbor install a water heater and even reported looking for work after claiming to be disabled.  AR 22-24 (citing AR 338, 346, 348).  The relevant inquiry is not whether Plaintiff could perform these activities without difficulty, but whether they are inconsistent with his allegations of total disability.  *See Smartt*, 53 F.4th at 499 (a claimant's "daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'") (quoting *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)).  In this case, the ALJ reasonably concluded that these activities suggested a greater functional capacity than alleged and supported the finding that Plaintiff retained the ability to perform work with the limitations reflected in the RFC.

Fourth, the ALJ permissibly considered a significant gap in treatment.  The record reflects a period of approximately eight months during which Plaintiff did not seek medical care following his initial evaluation.  AR 21, 23; *see also* AR 22 (referencing that "it does not appear that [Plaintiff] sought treatment for his neck pain or associated symptoms until August 15, 2022, approximately 15 months later").  Gaps in medical treatment can constitute a clear and convincing reason for discounting a claimant's subjective testimony.  *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Plaintiff contends that this gap resulted from lack of insurance coverage, and the Court acknowledges that financial barriers can sometimes explain limited treatment.  *See* Pl.'s Brief at 12 (Dkt. 16).  However, the ALJ reasonably observed the stark contrast between Plaintiff's otherwise regular treatment and then the complete absence of care during this interval.  Under

**MEMORANDUM DECISION AND ORDER - 11**

these circumstances, the ALJ did not err in considering the treatment gap as a corroborating factor among several others in evaluating the reliability of Plaintiff's allegations of completely disabling limitations.

Finally, much of Plaintiff's argument relies on portions of the record demonstrating that he does, in fact, experience symptoms related to his impairments. *See* Pl.'s Brief at 10-14 (Dkt. 16). But this argument largely depends on Plaintiff's reports (which the ALJ called into question) and, regardless, the fact that Plaintiff's medically determinable impairments significantly impact his ability to perform work activities is not in dispute. Indeed, the ALJ expressly acknowledged that Plaintiff suffers from severe impairments and experiences limitations as a result. AR 14-16. The question before the ALJ was not whether Plaintiff has impairments or symptoms, but whether those impairments are so limiting as to preclude all work. The ALJ reasonably concluded that, while Plaintiff's impairments impose meaningful limitations, the record does not support the degree of restriction he alleges. Consistent with that conclusion, the ALJ incorporated several limitations into the RFC to account for Plaintiff's impairments. AR 23, 26. Plaintiff does not identify evidence demonstrating that the RFC fails to accommodate his supported limitations.

Taken together, these considerations[1] provide clear and convincing reasons supporting the ALJ's decision to discount Plaintiff's subjective symptom allegations. Importantly, the Court's role is not to determine in the first instance whether Plaintiff is disabled under the Social Security Act, or even whether he experiences significant limitations. Rather, the Court must decide whether the ALJ's findings are supported by substantial evidence and free of harmful

---

[1] Even if one of the ALJ's stated reasons for discounting Plaintiff's testimony were erroneous, any such error would be harmless. When an ALJ provides multiple reasons for discounting a claimant's statements, the Court may affirm so long as at least one of the reasons is legally sufficient. *See Carmickle*, 533 F.3d at 1162-63.

**MEMORANDUM DECISION AND ORDER - 12**

legal error.  In evaluating Plaintiff's testimony, the ALJ did not dispute that Plaintiff experiences symptoms related to his impairments; the relevant inquiry was whether those impairments prevent him from sustaining full-time work.  On that point, Plaintiff identifies evidence that he believes supports a different conclusion.  But the presence of conflicting evidence does not warrant reversal or remand.  Even if the record could support Plaintiff's interpretation, the ALJ's evaluation of his subjective complaints was supported by clear and convincing reasons grounded in the record.  Because the ALJ's interpretation is rational and supported by substantial evidence, the Court must defer to it.  *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Plaintiff has not shown that the ALJ erred in evaluating his subjective complaints.  Remand is not warranted on this issue.

2.      The ALJ's RFC Assessment Properly Accounts for Plaintiff's Limitations

Plaintiff next argues that the ALJ's RFC assessment is unsupported because it fails to account for limitations affecting his ability to sustain full-time work activity.  In support, Plaintiff points to his diagnosis of post-concussive syndrome and related treatment from treating provider NP Thompson.  Pl.'s Brief at 15-18 (Dkt. 16).  According to Plaintiff, the ALJ erred by dismissing NP Thompson's opinion and by failing to evaluate whether the record supports limitations relating to his ability to remain on task, take breaks, otherwise sustain work activity over a regular work schedule.  *Id*.  Plaintiff therefore maintains that the RFC does not accurately reflect his ability to perform work on a regular and continuing basis.

a.      *The Standard for Evaluating Medical Opinions*

Plaintiff's argument that the RFC fails to account for limitations affecting his ability to sustain full-time work activity largely depends on the opinion of NP Thompson.  *See, e.g.*, Pl.'s

**MEMORANDUM DECISION AND ORDER - 13**

Brief at 15-18 (Dkt. 16) (citing AR 336, 338-39, 342, 352-53, 355 (treatment notes from NP Thompson to support his argument)).  Apart from Plaintiff's own subjective complaints – which the ALJ properly discounted (*see supra*) – the principal support for additional limitations such as unscheduled breaks, absenteeism, and the need to lie down comes from NP Thompson's medical source statement.  *Id*.; *see also* AR 493.  Accordingly, Plaintiff's RFC challenge rises or falls with whether the ALJ properly evaluated NP Thompson's opinion.

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply.  *See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors.  *Id*.  These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 416.920c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent

**MEMORANDUM DECISION AND ORDER - 14**

a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

> b.      *NP Thompson's Opinions and the ALJ's RFC Assessment*

In her December 2022 "Physical Assessment," NP Thompson diagnosed Plaintiff with chronic migraines and post-concussive syndrome. AR 493. She opined that Plaintiff's symptoms would often interfere with the attention and concentration required for simple work tasks. *Id*. She further indicated that Plaintiff would need to recline or lie down during a typical workday beyond normal breaks, could sit for approximately five hours and stand or walk for about four hours in an eight-hour day, and would require unscheduled breaks lasting approximately ten minutes each hour. *Id*. NP Thompson ultimately estimated that Plaintiff would likely miss work three to four times per month as a result of his impairments. AR 494.

The ALJ found these opinions "not persuasive," and instead credited the other agency and consultative doctors in finding that Plaintiff was not precluded from engaging in his past relevant work. AR 24-26. Plaintiff contends that the ALJ's justification for dismissing NP Thompson's opinions, and likewise her RFC assessment, are insufficient and thus unsupported by substantial evidence. Pl.'s Brief at 15-18 (Dkt. 16). The undersigned disagrees. Under the

**MEMORANDUM DECISION AND ORDER - 15**

applicable regulations, the ALJ was required to articulate how persuasive she found the opinion, focusing primarily on the factors of supportability and consistency. *See supra*. The decision reflects that the ALJ did exactly that.

First, the ALJ reasonably found that NP Thompson's opinions were not supported by her own treatment notes and objective medical findings. AR 25. In evaluating supportability, the ALJ explained that NP Thompson's Physical Assessment – which indicated that Plaintiff could essentially perform a less than sedentary range of work given routine absenteeism, and limitations affecting sustained attention and concentration – was inconsistent with the clinical findings documented during Plaintiff's treatment. *Id*. (citing AR 672, 674-75, 678, 688-89, 695). The ALJ observed that, instead, NP Thompson's treatment notes frequently reflected largely normal examination findings, including normal cognition, attention, and concentration; clear and fluent speech; intact balance and steady gait; and no acute distress. *Id*. The ALJ also noted that NP Thompson's records documented a positive response to migraine medications and resolution of Plaintiff's reported blackouts. *Id*. These treatment findings, the ALJ concluded, did not support the severe functional limitations NP Thompson endorsed, including the need for frequent unscheduled breaks, time to recline during the workday, and regular work absences. *Id*. ("Ms. Thompson's exams have never found manipulative or other neurologic deficits that would support the exertional and manipulative limitations suggested here.").

Second, the ALJ reasonably found NP Thompson's opinions inconsistent with other evidence in the record. *Id*. In assessing consistency, the ALJ pointed to multiple physical examinations and diagnostic findings from other providers that failed to corroborate the degree of limitation NP Thompson described. *Id*. (citing AR 454-55, 457-58, 663, 701-03, 706-10). The ALJ noted that diagnostic testing – including nerve conduction studies and other neurological examinations – did not reveal deficits consistent with the significant limitations

**MEMORANDUM DECISION AND ORDER - 16**

assessed by NP Thompson.  *Id*. ("Ms. Thompson provided no additional explanation for these limitations, as she only reported the claimant's diagnoses and medication side effects.").  By comparing NP Thompson's conclusions with these broader medical findings, the ALJ reasonably determined that her opinions were not consistent with the overall medical record and therefore was unpersuasive.

Plaintiff does not meaningfully address the ALJ's supportability and consistency analysis.  Instead, he argues only that, "[e]ven if the ALJ found the opinion unpersuasive, she was still required to evaluate whether Plaintiff had any limitations in sustaining work activity that were supported by the record."  Pl.'s Brief at 15 (Dkt. 16).  But that argument overlooks the premise of the ALJ's decision: the ALJ did not find such limitations supported by the record.

To the contrary, the ALJ specifically concluded that the objective evidence did not substantiate the cognitive or functional limitations Plaintiff alleged.  Indeed, as Plaintiff acknowledges, at Step Two of the sequential process, the ALJ addressed Plaintiff's complaints of memory loss, difficulty concentrating, and work-finding problems.  *Id*. at 16.  The ALJ explained that "the medical evidence of record is devoid of any cognitive testing to confirm his memory loss," and that neurological examinations consistently documented normal cognition, attention, and concentration.  *Id*. (citing AR 15-16) (quotations from ALJ).

Importantly, a diagnosis alone does not establish disabling functional limitations; rather, Plaintiff must demonstrate how the impairment translates into work-related restrictions.  *See Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990) (holding that a diagnosis, without evidence of resulting functional limitations, is insufficient to establish disability).  Having reasonably determined that the record did not support the additional limitations that Plaintiff attributes to NP Thompson's opinion, the ALJ was not required to incorporate them into the RFC.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding ALJ's RFC

**MEMORANDUM DECISION AND ORDER - 17**

determination where the ALJ took into account those limitations for which there was record support that did not depend on the claimant's subjective complaints). Accordingly, Plaintiff's challenge to the RFC does not demonstrate reversible error.

Ultimately, the question on appeal is not whether substantial evidence exists to support Plaintiff's preferred findings, but whether substantial evidence supports the ALJ's findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (when the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second guess it). Here, the ALJ's interpretation of NP Thompson's medical opinions may not be the only reasonable interpretation implicated by the record, but it is supported by substantial evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (as long as the evidence rationally supports the ALJ's conclusions, those conclusions must be affirmed).

Remand is not warranted on this issue either.

## IV. **CONCLUSION**

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. The ALJ has provided reasonable and rational support for her conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Plaintiff's disability claim were based upon proper legal standards and supported by substantial evidence. The Commissioner's decision is affirmed and Plaintiff's Complaint (Dkt. 1) is denied.

## V. **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, that Plaintiff's Complaint (Dkt. 1) is DENIED, and this action is DISMISSED in its entirety, with prejudice.

**MEMORANDUM DECISION AND ORDER - 18**



DATED: March 19, 2026

_____

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge